Matter of Disability Rights N.Y. v State Justice Ctr. for the Protection of People with Special Needs (2026 NY Slip Op 01111)

Matter of Disability Rights N.Y. v State Justice Ctr. for the Protection of People with Special Needs

2026 NY Slip Op 01111

Decided on February 26, 2026

Appellate Division, Third Department

Mackey, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

CV-25-1296

[*1]In the Matter of Disability Rights New York, Respondent,
vState Justice Center for the Protection of People with Special Needs et al., Appellants.

Calendar Date:January 14, 2026

Before: Reynolds Fitzgerald, J.P., Ceresia, Fisher, McShan and Mackey, JJ.

Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for appellants.
Disability Rights New York, Rensselaer (Alyssa Galea of counsel), for respondent.

Mackey, J.
Appeals (1) from a judgment of the Supreme Court (Peter Lynch, J.), entered June 27, 2025 in Albany County, which, among other things, granted petitioner's application, in a combined proceeding pursuant to CPLR article 78, plenary action and action for declaratory judgment, to compel respondents to produce certain records, and (2) from an order of said court, entered August 15, 2025 in Albany County, which granted petitioner's motion for an award of counsel fees.
This combined CPLR article 78 proceeding and action for declaratory judgment centers upon the scope of petitioner's entitlement to access certain confidential records held by respondents pursuant to its authority to investigate matters related to the care of persons with disabilities in this state. At the heart of this appeal is the federally enacted Developmental Disabilities Assistance and Bill of Rights Act (see 42 USC § 15001 et seq. [hereinafter the DD Act]), which encourages states "to safeguard the rights of individuals with developmental disabilities by offering federal funds to states with an effective protection and advocacy (P & A) system" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 113 [2012]). To this end, states are to implement "a system to protect and advocate the rights of individuals with developmental disabilities" that is "independent of any agency that provides treatment, services, or habilitation" to such individuals (42 USC § 15043 [a] [1], [2] [G]). A state's receipt of funding under the DD Act requires that the state's system, among other powers, "have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred" (42 USC § 15043 [a] [2] [B]; see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 113-115). In balancing the need to facilitate this investigatory role with an individual's right to privacy, the federal statutory scheme delineates specific circumstances under which records related to such investigations must be accessible to P & A entities. This state has accordingly enacted such a system and tasked P & A entities with its administration (see Executive Law § 558 [b]).
Petitioner is one such P & A entity authorized to investigate the abuse and neglect of persons with disabilities in this state (see Executive Law § 558 [b]), whereas respondent Justice Center for the Protection of People with Special Needs is a state agency responsible for, among other things, investigating and responding to allegations of misconduct regarding individuals with developmental disabilities and maintaining a central registry of reports of such allegations (see Executive Law § 553 [1], [2]; Social Services Law § 492 [1]).
In January 2025, petitioner notified respondents that it "ha[d] received complaints about alleged [*2]abuse and/or neglect of person(s) with a developmental disability attending" a privately operated school. In connection with those complaints, petitioner requested, pursuant to the DD Act, all "unredacted case summary reports related to any incident(s) reported" between September 1, 2023 and July 30, 2024 at that facility. Respondents replied that they could not process petitioner's request as written, as petitioner's authority in this regard was limited "to request[ing] records regarding a specific individual" and, accordingly, respondents directed petitioner to provide the name of the subject individual or, alternatively, to submit a Freedom of Information Law request. Petitioner and respondents maintained their respective positions in subsequent correspondence.
Petitioner thereafter commenced this combined proceeding/action seeking, among other things, to compel respondents to provide petitioner with the requested records and for a corresponding declaratory judgment, as well as counsel fees. Following various motion practice, Supreme Court found that, in furtherance of petitioner's authority to investigate incidents of abuse, petitioner is entitled to access facility records "of any abused individual" and that such access is not conditioned upon petitioner specifying an individual or incident. As such, the court held that respondents' denial of the requested records upon this basis was affected by an error of law, arbitrary and capricious and an abuse of discretion.[FN1] Respondents were thus directed to disclose the requested records to petitioner. In a separate order, the court awarded petitioner associated counsel fees. Respondents appeal from both the judgment and the order.
Our inquiry here distills to whether petitioner is entitled — in executing its investigatory, oversight function as a P & A entity — to unqualified access to records pertaining to the abuse and/or neglect of persons with developmental disabilities within subject facilities, or whether respondents properly conditioned such access upon satisfaction of the disclosure requirements delineated under the DD Act.
At the outset, we are unpersuaded by petitioner's arguments that it is "entitled to extensive access to records" in furtherance of its investigatory role under federal law. Under the DD Act, P & A entities are granted "the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the [entity] or if there is probable cause to believe that the incidents occurred" (42 USC § 15043 [a] [2] [B]). In furtherance of this role, the DD Act provides that a P & A entity "shall . . . have access to all records of . . . any individual" in four express scenarios (42 USC § 15043 [a] [2] [I]; see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 113-115).
First, a P & A entity is entitled to "immediate access" to records without the consent of any person where it[*3]"determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy" or when the subject person has died (42 USC § 15043 [a] [2] [J] [ii] [I]; see 42 USC § 15043 [a] [2] [J] [ii] [II]; 45 CFR 1326.25 [a] [4], [5]). Second, access must also be granted in nonemergency situations if authorization is given by the individual or their "legal guardian, conservator, or other legal representative" (42 USC § 15043 [a] [2] [I] [i]; see 45 CFR 1326.25 [a] [1]). "Third, a P & A entity is to be afforded access where (a) the individual is incapable of granting authorization; (b) the individual does not have a legal representative; and (c) the system has received a complaint with regard to the individual's treatment or, as a result of monitoring activities, there is probable cause to believe that the individual has been abused or neglected" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 114, citing 42 USC § 15043 [a] [2] [I] [ii]; see 45 CFR 1326.25 [a] [2]). Finally, access must be given in the case where "(a) the individual has a legal representative; (b) the P & A entity has received a complaint with regard to the individual's treatment or, as a result of monitoring activities, there is probable cause to believe that the individual has been abused or neglected; and (c) the P & A entity has contacted the legal representative and offered assistance but the representative has failed or refused to act on the individual's behalf" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 114, citing 42 USC § 15043 [a] [2] [I] [iii]; see 45 CFR 1326.25 [a] [3]).
Satisfaction of the disclosure requirements under the DD Act thus necessitate the identification of the subject individual to either secure necessary consent or determine if circumstances otherwise permit disclosure. The result is "a carefully calibrated system that t[akes] into consideration both the privacy interests of developmentally disabled persons and the need for P & A organizations to examine records in order to pursue their statutory functions" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 115). Here, although petitioner's request for records advised that it had received complaints regarding a particular facility subject to respondents' oversight, it did not identify the subject(s) of the complaints or provide respondents any information that would allow respondents to determine whether one of the four circumstances enumerated in the DD Act applied. Nothing in the federal statutory language supports petitioner's contention that it is permitted unqualified access to records in furtherance of its investigatory role. To the contrary, petitioner's access is expressly conditioned upon satisfaction of one of the four above-detailed scenarios, which necessitate the identification of the individual[*4](s) whose records are sought (see 42 USC § 15043 [a] [2] [I], [J]; see also 45 CFR 1326.25 [a]).
We similarly find unavailing petitioner's arguments that it is entitled to unfettered access to the requested records under state law. "In matters of statutory interpretation, our primary consideration is to discern and give effect to the Legislature's intention," and, "[a]s we have repeatedly stated, the text of a provision is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 120 [internal quotation marks and citation omitted]). To this end, "[w]e are also guided in our analysis by the familiar principle that a statute must be construed as a whole and that its various sections must be considered together and with reference to each other" (Matter of Markey v Tietz, 244 AD3d 78, 84 [3d Dept 2025] [internal quotation marks and citations omitted]).
Petitioner is correct that state law provides that, "[u]pon receipt of a complaint of an incident of abuse or neglect of an individual with a disability, or if [petitioner] determines there is probable cause to believe that such an incident occurred, or in other instances related to an investigation of a violation of such individual's rights, [petitioner] shall have prompt access . . . to all books, records and data pertaining to [the subject] facility . . . ; . . . to records of a facility or provider agency concerning such individual; and to any other records or data that [petitioner] determines are relevant to conducting an investigation" (L 2022, ch 28, § 1). Again, however, identification of the subject individual is contemplated. It bears further noting that L 2022, ch 28, as amended L 2021, ch 755, was enacted for the purpose of "codif[ying] existing federal law which allows access to records" for the P & A entity established by the DD Act (Division of the Budget Mem in Support, Bill Jacket, L 2021, ch 755 at 8).
Similarly, although Executive Law § 558 — the enabling legislation for petitioner's investigatory authority — expressly provides that petitioner must "conduct and coordinate the protection and advocacy and client assistance programs, as established by federal law," and grants petitioner access to records to this end, such access must be "[p]ursuant to the requirements of federal law" (Executive Law § 558 [b] [ii], [iii]). To the extent that Executive Law § 558 further provides that petitioner "shall have access to [the] records of [respondents] as set forth in [Social Services Law § 496 (1) (f) and (2) (y)]" (Executive Law § 558 [b] [iii]), the corresponding provisions of the Social Services Law similarly require that disclosure of records be given "consistent with any other applicable state or federal law" (Social Services Law § 496 [1]). Even substantiated reports "shall be confidential and shall not be disclosed [*5]to any other party unless authorized pursuant to
. . . applicable state or federal law" and, significantly, "[i]n the event that other applicable state or federal law provisions are more restrictive than the provisions of [Social Services Law § 496], the provisions of such other state or federal law shall apply" (Social Services Law § 496 [2]).
In according the statutory language its plain and ordinary meaning, we conclude that, although this state's legislative scheme affords petitioner substantial access to records necessary to perform its function as a P & A entity, that access is not unfettered. Rather, it is tempered by the privacy safeguards outlined in the DD Act and there is no basis in the statute or relevant case law to conclude that the Legislature intended to expand such access beyond the scope of the DD Act (see Executive Law § 558 [b] [ii], [iii]; see generally Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d at 123). As petitioner's records request, in the absence of necessary identifying information, failed to satisfy any of the scenarios for record disclosure contemplated under the DD Act, as embraced by this state, Supreme Court erred in finding that respondents' denial of said request was improper and, thus, in directing respondents to disclose the records sought to petitioner (see generally Public Officers Law § 96 [2] [b]).
In view of our determination, the award of counsel fees should not have been granted (see CPLR 8601 [a]; Matter of Vapor Tech. Assn. v Cuomo, 203 AD3d 1516, 1517 [3d Dept 2022], lv dismissed 39 NY3d 960 [2022]). The parties' remaining contentions, to the extent not expressly addressed herein, have either been rendered academic or considered and found to be unpersuasive.
Reynolds Fitzgerald, J.P., Ceresia, Fisher and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as directed respondents to produce the requested records; petition denied; and, as so modified, affirmed.
ORDERED that the order is reversed, on the law, without costs, and petitioner's application for counsel fees denied.

Footnotes

Footnote 1: Supreme Court further held that petitioner had failed to properly commence its action for a declaratory judgment, which determination is not challenged on appeal.